FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 21 2015

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

REMA TIP TOP/NORTH AMERICA, INC.,)

       Plaintiff,

v.

SHAW-ALMEX INDUSTRIES, LTD., and
MICHAEL CREMEENS, individually,

       Defendants.

) Case No. **1:15-CV-1838**

**AT**

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff REMA Tip Top/North America, Inc. ("Plaintiff" or REMA")

hereby files this Complaint against Shaw-Almex Industries, Ltd., and Michael

Cremeens, an individual, as follows.

NATURE OF THE ACTION

1.    This is an action for injunctive relief and damages premised on

REMA's claims for misappropriation of trade secrets.

2.    REMA is a corporation incorporated and existing under the laws of

the state of New Jersey and having its principal place of business located at 119

Rockland Avenue, Northvale, New Jersey 07647.

3.    Defendant Shaw-Almex Industries, Ltd. ("Shaw-Almex") is a closely

held limited company incorporated and existing under the laws of Canada and

having its principal place of business located at 323 Glover Road, Stoney Creek, Ontario, Canada. Shaw-Almex transacts business in the state of Georgia and maintains an office and employees in the state of Georgia at 5150 Snapfinger Woods Drive, Decatur, Georgia 30035.

4.      Shaw-Almex operates under the Almex Group and includes wholly owned subsidiaries including, Fusion LLC, with a principal place of business located at 5150 Snapfinger Woods Drive, Decatur, Georgia 30035, and other subsidiaries with offices in Australia, Brasil, Chile, China, Netherlands, India, South Africa, Mexico, Peru, and Indonesia.

5.      Defendant Michael Cremeens is an adult citizen and resident of the state of Georgia residing in DeKalb County, Georgia.

6.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between REMA, on the one hand, and Shaw-Almex and Cremeens, on the other; and the matter in controversy between REMA and the Defendants exceeds $75,000, exclusive of interest and costs.

7.      Venue of this action is proper in this judicial district and division because a substantial part of the events or omissions giving rise to the claim

occurred, or a substantial part of property that is the subject of the action is situated in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

8.     REMA is a wholly-owned subsidiary of REMA AG, a German corporation, which in turn is wholly-owned by STAHLGRUBER Otto Gruber AG ("STAHLGRUBER"), a German corporation, and maintains a production and shipping facility in Madison, Morgan County, Georgia.

9.     REMA sells and distributes products manufactured by STAHLGRUBER or manufactured for STAHLGRUBER by one of its wholly owned subsidiaries, as well as products manufactured by REMA itself.

10.     STAHLGRUBER operates a global enterprise of companies, including REMA, and is a global market leader in the manufacture of high-quality conveyor maintenance, wear protection, corrosion protection, bonding systems, and automotive tire repair and retread products.

11.     REMA and STAHLGRUBER have built reputations for the manufacture of products of the highest quality and that have proprietary properties, including integrated elastomer and adhesive systems, reactive bonding layers, increased durability resulting from composition and manufacturing processes, and production capacity.

12. REMA and STAHLGRUBER products are manufactured strictly in accordance with chemical formulae that are owned and maintained by STAHLGRUBER. The chemical formulae are trade secrets and kept strictly confidential.

13. REMA's Industrial Division is a leader in providing products and services for conveyor maintenance, wear protection, and corrosion protection and its products are designed, among other things, to considerably extend the service life of industrial equipment.

14. REMA sells and distributes, inter alia, a line of products known as Remaline, which are proprietary compounded elastomers manufactured by STAHLGRUBER that serve to provide superior wear protection, vibration reduction, and noise reduction. REMA also sells and distributes filler rubber and pulley lagging with a proprietary bonding material.

15. Cremeens is employed by Shaw-Almex as Vice President Business Development and maintains his office at 5051 Snapfinger Woods Drive, Decatur, Georgia 30035.

16. Cremeens has worked in the conveyor and wear protection business for many years. Cremeens previously was an employee of REMA and worked as

its Technical Manager.. After leaving REMA, Cremeens was employed by another conveyor engineering company and then returned to Shaw-Almex.

17.    Olaf Gunnarsson is President of REMA and works in REMA's office located in Northvale, New Jersey.

18.    In March or April of 2015, Gunnarsson received a call from a REMA customer informing Gunnarsson that he was visited by Matt Moher and Brent Fenty, sales representatives of Shaw-Almex, who represented that Shaw-Almex had products that were copies of REMA products.

19.    The customer explained to Gunnarsson that he was calling because it appeared that Shaw-Almex was "coming after" REMA.

20.    Following his conversation with this customer, Gunnarsson and another representative of REMA, Joe Jernigan, Vice President of Industrial Sales, met with Cremeens on or about May 1, 2015 in a hotel near Hartsfield-Jackson Atlanta International Airport.

21.    During the course of the meeting, Gunnarsson inquired about Shaw-Almex's copying REMA products. Cremeens told Gunnarsson that Shaw-Almex can make products identical to those of REMA. In claiming Shaw-Almex had the ability to make products identical to those of REMA, Cremeens specifically

mentioned filler rubber, 78" lagging with the same bonding material as REMA's lagging, and the entire line of Remaline products.

22.     When challenged about the ability of Shaw-Almex to make similar products, Cremeens told Gunnarsson that Shaw-Almex has REMA's formulations. To prove his point, Cremeens displayed to Gunnarsson and Jernigan on an Apple laptop a file that was saved on that computer titled "2003-02 RTT Recepies.XLS" (the "Recipe File"), which Gunnarsson recognized as being in German and saw other indicia identifying the document as possibly belonging to REMA and its parent company.

23.     When questioned about the source of the Recipe File, Cremeens replied to the effect that he could not disclose that information.

24.     At that time, Gunnarsson used the camera on his phone to capture an image of the Recipe File as displayed on Cremeens' computer.

25.     After investigating, REMA and STAHLGRUBER determined that the Recipe File displayed to Gunnarsson was an authentic electronic copy of the trade secret formulas for the Remaline product line.

26.     The Recipe File is an Excel spreadsheet with tabs for each of approximately 16 compounds for rubber-based wear protection products that were

specifically developed by STAHLGRUBER for sale and distribution exclusively by its wholly owned subsidiaries, including plaintiff REMA.

27.    The Recipe File shows at the tab that is open and displayed the components used to make the product identified, the amounts of each component, the cost per unit of each component, the total cost per unit of volume for the product, and the historical formulaic information for prior versions of the product along with all of the foregoing details for each prior version. The tab that was open and displayed by Cremeens to Gunnersson and Jernigan included the tradename of one of REMA's rubber based wear protection products.

28.    In investigating the authenticity of the file displayed by Cremeens, REMA and STAHLGRUBER confirmed that the format and content of the file appeared substantively identical to the master file maintained by STAHLGRUBER.

29.    During the meeting or in a subsequent conversation, Cremeens informed Gunnarsson that Shaw-Almex has had the Recipe File for approximately three years and recruited Cremeens' brother, Scott Cremeens, a doctoral rubber chemist with 40 years of industry experience, out of retirement to perfect the manufacture of the products using the proprietary, trade secret REMA formulas because Shaw-Almex was unsuccessful in their first manufacturing attempts.

30.     Cremeens also told Gunnersson and Jernigan that Shaw-Almex has the ability to make a "perfect sample" of the REMA and STAHLGRUBER products.

31.     Cremeens further informed Gunnersson that Shaw-Almex was in the process of being sold. Upon information and belief, Shaw-Almex is scheduled to be sold to Semperit AG Holding, or a related affiliate. Semperit AG Holding is a global enterprise based in Belgium, and includes an Industrial Division that manufactures and services rubber products and conveyor belt systems to, among others, the mining industry.

32.     Upon information and belief, Shaw-Almex has the present ability to produce competing products using the proprietary trade secret formulas belonging to REMA and STAHLGRUBER.

## COUNT I
### Violation of Georgia Trade Secrets Act

33.     REMA adopts and realleges the allegations contained in paragraphs 1-38 above as if fully set forth herein.

34.     The information and computer files of REMA misappropriated by Cremeens and Shaw-Almex contain or constitute trade secret information under Georgia law as the information derives economic value from not being generally known to, and not being readily ascertainable by proper means, by other persons

8

who can obtain economic value from its disclosure and use. The information is and at all relevant times has been the subject of reasonable efforts by REMA and all related or affiliate companies to maintain its secrecy.

35.    Cremeens and Shaw-Almex unlawfully misappropriated REMA's trade secret information and REMA has or will sustain irreparable harm as a direct and proximate result of these unlawful actions. Unless otherwise restrained by this Court, Cremeens and Shaw-Almex will cause irreparable injury to REMA, for which there will be no adequate remedy at law.

36.    REMA is entitled to injunctive relief including, but not limited to, an order: (a) prohibiting Cremeens and Shaw-Almex, including all of its agents and employees, from directly or indirectly making any use or disclosing REMA's trade secret information; (b) requiring the return to REMA of all trade secret information, in whatever form, and all copies and derivatives of same; (c) if trade secret information is or was contained on a computer disk, hard drive, zip drive or other electronic storage means, requiring said disk, hard drive, zip drive or other electronic storage means whatsoever to be either delivered to REMA, or that an independent forensic expert be provided access to such computer media for the purpose of destroying or modifying the computer media so that all trade secret information contained therein is permanently deleted or is otherwise rendered

9

permanently inaccessible; and (d) requiring that Cremeens and Shaw-Almex provide evidence that is sufficient to conclusively establish they have complied with the terms set forth in items (a), (b), and (c) above.

37.    REMA is entitled to recover damages caused by Cremeen and Shaw-Almex's conduct, including, without limitation, actual damages, unjust enrichment, or damages measured in terms of a reasonable royalty.

38.    Cremeens and Shaw-Almex's misappropriation was done willfully and maliciously, thereby warranting an award to REMA of exemplary damages, and the recovery of reasonable attorney's fees.

## COUNT II
### Misappropriation and Conversion of Property

39.    REMA adopts and realleges the allegations contained in paragraphs 1-[NO.] above as if fully set forth herein.

40.    Defendants have wrongfully taken or retained possession of property owned by REMA and have wrongfully refused to return such property to REMA.

41.    Defendants' conduct as set forth hereinabove was malicious, intentional, willful, wanton, and in reckless disregard to the rights of REMA.

42.    REMA has suffered actual damages in an amount not yet determined as a result of Defendants' conduct. REMA is entitled to recover from Defendants the full amount of these sums once they are determined.

10

43.    REMA further is entitled to recover from Defendants punitive damages and attorney's fees in an amount to be shown at trial.

44.    REMA has been damaged as a result of the misappropriation of its property by Defendants. Further, the misappropriation of its property subjects REMA to a pending and ongoing threat of immediate irreparable harm that will continue unless an injunction issues mandating the return of REMA's property, and all copies and derivatives thereof, and prohibiting any further use of same.

## PRAYER FOR RELIEF

WHEREFORE, REMA demands that judgment be made and entered in its favor against Defendants as follows:

A.    Entry of temporary, interlocutory, and permanent injunctions enjoining Defendants from disclosing, using, modifying or adapting any of REMA's trade secrets;

B.    Entry of temporary, interlocutory, and permanent injunctions requiring Defendants to return to REMA all of its property, including all information or tangible items in whatever form, and all copies or derivatives thereof, reflecting or containing REMA's trade secrets;

C.    Award REMA actual and compensatory damages in an amount to be determined at trial;

D.    Award REMA exemplary damages in an amount to be determined at trial;

E.    Award REMA punitive damages in an amount to be determined at trial;

F.    Award REMA all costs and attorney's fees it incurs in the prosecution of this lawsuit, pursuant to O.C.G.A. § 10-1-764;

G.    Award REMA interest as allowed by law;

H.    Grant such other and further relief as this Court in its judgment deems just and appropriate.

Respectfully submitted this 21st day of May, 2015.

OGLETREE, DEAKINS, NASH, SMOAK AND STEWART, P.C.

By: *Christopher M. Caiaccio*

David P. Thatcher
Georgia Bar No. 703299
Christopher M. Caiaccio
Georgia Bar No. 102002

One Ninety One Peachtree Tower
191 Peachtree Road, N.E., Suite 4800
Atlanta, Georgia  30303
Telephone:  (404) 881-1300
Facsimile: (404) 870-1732
david.thatcher@ogletreedeakins.com
chris.caiaccio@ogletreedeakins.com

Robert A. Sar
(*pro hac vice* application to be filed)
N.C. Bar No. 22306
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
robert.sar@ogletreedeakins.com

***Attorneys for Plaintiff REMA Tip Top/North America, Inc.***

21191870.4