FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 21 2015

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| REMA TIP TOP/NORTH AMERICA, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SHAW-ALMEX INDUSTRIES, LTD., and ) <br> MICHAEL CREMEENS, individually, ) <br> ) <br> Defendants. ) | Case No. _____ <br> 1:15-CV-1838 |

## DECLARATION OF OLAFUR GUNNARSSON

1. My name is Olafur Gunnarsson. I declare under penalty of perjury that this Declaration, consisting of thirty-six (36) numbered paragraphs, is true and correct.

2. I provide this Declaration voluntarily for use in the above-captioned case. I am over 18 years of age and have no impairment that would prevent me from presenting a truthful and accurate Declaration or would render me incompetent to testify. I have been told that I am completely free to write on any portion of this Declaration, or to add, change, or delete any portions as I believe necessary. I am giving this Declaration of my own free will. I have not been coerced, threatened, intimidated or pressured to give this statement.

3. I am President of the Plaintiff, REMA Tip Top/North America, Inc. ("REMA"). I have personal knowledge of all of the facts set forth below, or know of them by my review of relevant documents, and, if called to testify to the same, I could and would do so competently and truthfully.

4. As President of REMA, I have responsibility for all operations of the company and report to REMA's parent company and ultimately to STAHLGRUBER Otto Gruber AG ("STAHLGRUBER"), a German corporation.

- 1 -

5. REMA is engaged in the business of selling and distributing products manufactured by STAHLGRUBER or manufactured for STAHLGRUBER by one of its wholly owned subsidiaries, as well as products manufactured by REMA itself.

6. REMA is a wholly-owned subsidiary of STAHLGRUBER and maintains a production and shipping facility in Madison, Morgan County, Georgia.

7. STAHLGRUBER operates a global enterprise of companies, including REMA, and is a global market leader in the manufacture of high-quality conveyor maintenance products, wear protection, corrosion protection, bonding systems, and automotive tire repair and retread products.

8. REMA and STAHLGRUBER have built reputations for the manufacture of products of the highest quality and that have proprietary properties, including integrated elastomer and adhesive systems, reactive bonding layers, increased durability resulting from composition and manufacturing processes, and production capacity.

9. REMA and STAHLGRUBER products are manufactured strictly in accordance with chemical formulae that are owned and maintained by STAHLGRUBER. The chemical formulae are trade secrets and kept strictly confidential.

10. REMA's Industrial Division is a leader in providing products and services for conveyor maintenance, wear protection, and surface protection and its products are designed, among other things, to considerably extend the service life of industrial equipment.

11. REMA sells and distributes a line of products known as Remaline, which are proprietary compounded elastomers manufactured by STAHLGRUBER that serve to provide superior wear protection, vibration reduction, and noise reduction. REMA also sells and distributes filler rubber and pulley lagging with a proprietary bonding material.

12. Defendant Michael Cremeens ("Cremeens") formerly was an employee of REMA and currently is employed by Defendant Shaw-Almex Industries, Ltd. ("Shaw-Almex") as Vice President Business Development and maintains an office at 5051 Snapfinger Woods Drive, Decatur, Georgia 30035.

13. In March or April of 2015, I received a call from a REMA customer informing me that the customer had been visited by Matt Moher and Brent Fenty, sales representatives of Shaw-Almex, who represented to the customer that Shaw-Almex had products that were copies of REMA products.

14. The customer explained to me that the reason he was calling was because it appeared that Shaw-Almex was "coming after" REMA.

15. Subsequent to my conversation with this customer, I and another representative of REMA, Joe Jernigan, Vice President of Industrial Sales, met with Cremeens on or about April 10, 2015 in the Embassy Suites Hotel near Hartsfield-Jackson Atlanta International Airport.

16. During the course of the meeting, I inquired with Cremeens about Shaw-Almex's copying REMA products. Cremeens said that Shaw-Almex can make products identical to those of REMA. In claiming Shaw-Almex had the ability to make products identical to those of REMA, Cremeens specifically mentioned filler rubber, 78" lagging with the same bonding material as REMA's lagging, and the entire line of Remaline products.

17. When I challenged Cremeens about the ability of Shaw-Almex to make similar products, Cremeens told me that Shaw-Almex has REMA's formulations. To prove his point, Cremeens displayed to Jernigan and me on an Apple laptop a file that was saved on that computer titled "2003-02 RTT Recepies.XLS" (the "Recipe File"), which I recognized as being

in German and saw other indicia identifying the document as possibly belonging to REMA and its parent company.

18. When I questioned Cremeens about the source of the Recipe File, Cremeens replied to the effect that he could not disclose that information.

19. At that time, I used the camera on my phone to capture an image of the Recipe File as displayed on Cremeens' computer.

20. After reviewing the image of the Recipe File that I captured and investigating, REMA and STAHLGRUBER determined that the Recipe File displayed on Cremeens' computer was an authentic electronic copy of the trade secret formulas for the Remaline product line.

21. The Recipe File is an Excel spreadsheet with tabs for each of approximately 16 compounds for rubber-based wear protection products that were specifically developed by STAHLGRUBER for sale and distribution exclusively by its wholly owned subsidiaries, including plaintiff REMA.

22. The Recipe File shows at the tab that is open and displayed the components used to make the product identified, the amounts of each component, the cost per unit of each component, the total cost per unit of volume for the product, and the historical formulaic information for prior versions of the product along with all of the foregoing details for each prior version. The tab that was open and displayed by Cremeens to Jernigan and me included the trade name of one of REMA's rubber based wear protection products.

23. In investigating the authenticity of the file displayed by Cremeens, REMA and STAHLGRUBER confirmed that the format and content of the file appeared substantively identical to the master file maintained by STAHLGRUBER.

24. During the meeting or in a subsequent conversation, Cremeens informed me that Shaw-Almex has had the Recipe File for approximately three years and recruited Cremeens' brother, Scott Cremeens, a doctoral rubber chemist with 40 years of industry experience, out of retirement to perfect the manufacture of the products using the proprietary, trade secret REMA formulas because Shaw-Almex was unsuccessful in their first manufacturing attempts.

25. Cremeens also told Jernigan and me that Shaw-Almex has produced rolls of one REMA's wear protection products using the information in the Recipe File, with 10 rolls of a 40 roll order having been delivered to a customer for evaluation, and that production is scheduled to continue this week.

26. Cremeens further informed me that Shaw-Almex was in the process of being sold, and I believe that the buyer of Shaw-Almex is Semperit AG Holding, or a related affiliate. According to its web site, Semperit AG Holding is a global enterprise based in Belgium, and includes an Industrial Division that manufactures and services rubber products and conveyor belt systems to, among others, the mining industry.

27. Based on the information available to me, I believe Shaw-Almex has the present ability to produce competing products using the proprietary trade secret formulas belonging to REMA and STAHLGRUBER.

28. The information and computer files of REMA misappropriated by Cremeens and Shaw-Almex contain or constitute information that derives economic value from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure and use.

29. The information contained in the Recipe File is confidential to REMA and is subject to strict efforts to maintain its secrecy. Even within REMA, very few individuals have

access to the formulas, even at the facilities at which the products are produced. For example, REMA formulas are kept in electronic and paper formats, maintained in a sealed envelope in a safe and only two individuals, not including myself, have the combination. Furthermore, the retention of the formula in sealed envelopes create a control and record for identifying anyone who has accessed or attempted to access the information.

30. The Recipe File information is not available from any source other than REMA or STAHLGRUBER and is not known or available to the public in general or, specifically, to competitors of REMA or STAHLGRUBER.

31. The information and computer files of REMA misappropriated by Shaw-Almex and shared with Cremeens and others are and at all relevant times have been the subject of reasonable efforts by REMA and all related or affiliate companies to maintain its secrecy.

32. The information contained in the Recipe File would be very valuable to a competitor of REMA who could derive value from knowing the components that make up the formula for the Remaline or other REMA products, the amounts of each component in the current version of the formula, the current cost per unit of each component, the current total cost per unit of volume for the REMA product, and the historical formulaic information for prior versions of the product along with all of the foregoing details for each prior version.

33. The current information in the Recipe File coupled with the historic information would show a competitor not only how the current formula is made, but all of the historical advances made by REMA in improving the quality of its products and lowering the cost of producing those products.

34. In addition, the current cost information would show a competitor REMA's cost to acquire the materials is uses in manufacturing its products and the total cost to manufacture

particular products. A competitor of REMA could obtain a distinct and unfair advantage in the marketplace if the information described herein were made available to it, essentially allowing the competitor unfairly to bypass many years of research and development to be able to produce the highest quality product on the market. The impact of a competitor learning this confidential information, using this information to market and sell products, and sharing this information with mutual customers would result in permanent, long-term, and irreparable economic damage to REMA's business.

35. With the Recipe File, Cremeens or Shaw-Almex could use the information to disrupt and permanently damage REMA's actual and prospective customer relationships. It would be impossible to value the full extent of the damage that is threatened by Cremeens or Shaw-Almex's use of the information contained in the documents and files misappropriated as set forth above.

36. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 19 day of May, 2015. (28 U.S.C. § 1746)

_____
Olafur Gunnarsson

21208918.3